**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **LORI RUFF,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:16-CV-2558-L** |
| | § | |
| **OMNITRITION INTERNATIONAL,** | § | |
| **INC.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Omnitrition International, Inc.'s ("Omnitrition" or "Defendant") Motion to Exclude Expert Testimony ("Motion to Exclude") (Doc. 54) and Motion for Partial Summary Judgment ("Motion") (Doc. 55), both filed on September 17, 2019. After careful consideration of the Motions, responses, replies, record, evidence, applicable law, and the parties' supplemental summary judgment briefing (Docs. 83 & 84), the court **denies as moot** Defendant's Motion to Exclude (Doc. 54); **grants in part** and **denies in part** Defendant's Motion for Partial Summary Judgment (Doc. 55); and **dismisses with prejudice** Plaintiff Lori Ruff's ("Plaintiff" or "Ms. Ruff") claims for: (1) breach of contract; (2) tortious interference with existing contracts; and (3) tortious interference with prospective business relations.

## I.    Procedural and Factual Background

Omnitrition is a direct-sales, multi-level marketing ("MLM") company that sells health and nutrition products to the general public through a network of Independent Marketing Associates ("IMAs" or "distributors"). On March 20, 2013, Ms. Ruff joined Omnitrition as part of Heidi

Whitehair's ("Ms. Whitehair") "downline."[1]  By joining Omnitrition, Ms. Ruff signed an Agreement of Distributorship ("Agreement") and the Omnitrition Sales and Marketing Plan and Rules and Regulations Handbook ("Handbook"), which governs the relationship between Omnitrition and its distributors.  Def.'s Supp. App. 72.[2]  Ms. Ruff also signed an Agreement Not to Compete ("Non-Compete Agreement"), in which she agreed not to compete with Omnitrition for two months after termination as a distributor.  *See* Def.'s Supp. App. 70.[3]  She also agreed not to "directly or indirectly . . . solicit, recruit, contact, or otherwise attempt to do business with, individuals who were customers or IMAs of Omnitrition as of the date of the termination, for any reason, of this agreement."  *Id.* at 71.

The parties present certain provisions of the Handbook that apply to the claims before the court.  First, section C of the Handbook details a distributor's obligations for managing his or her downline.  Pl.'s Supp. App. 221-24.  Second, subsection C-12 of the Handbook outlines the procedures for how a distributor can sell his or her downline.  *Id.* at 224. The Handbook also contains Omnitrition's Code of Professional Ethics ("Ethics Rules"), which in pertinent part provides:

> A-1. An IMA will be honest and fair in all his or her dealings while acting as an IMA of Omnitrition, including when dealing with potential customers and distributors, as well as other Omnitrition IMAs, Omnitrition employees and officers, and when filing reports and documents with the Company.  An IMA shall be respectful, courteous and considerate toward Omnitrition, its officers, directors, employees and distributors.
>
> A-2. An IMA will perform all his or her professional activities in a manner that will enhance his or her reputation and the positive reputation established by Omnitrition.

---

[1] A "downline" refers to the individuals that another distributor recruits to join his or her team.  Pl.'s Supp. Br., Doc. 83 ¶ 3.  Everyone who signs up under a distributor to become a part of that team is part of the distributor's downline, which may consist of hundreds or thousands of individuals.

[2] The appendix page number citations refer to the ECF page numbers rather than the appendix footnote page citations.

[3] Neither party attaches the Non-Compete Agreement signed by Ms. Ruff; however, both parties acknowledge that she signed one similar to the one provided by Omnitrition, and Ms. Ruff has not identified any material differences. Accordingly, there is no dispute as to this fact.

**Memorandum Opinion and Order – Page 2**

[…]

A-4. An IMA will be courteous and respectful to every person contacted in the course of his or her Omnitrition business.  An IMA shall not insult, defame or harass others when conducting business, attending Omnitrition sponsored events or using Omnitrition's voice mail system.

Pl.'s Supp. App. 219.

To ensure that the Ethics Rules are followed, section H of the Handbook provides that Omnitrition's Ethics Department "holds the primary responsibility for enforcement of the [Ethics Rules] and the Rules and Regulations."  *Id.* at 233.  The Agreement and Handbook state that Omnitrition may amend its Handbook at any time.  *Id.*  It also provides that Ms. Ruff's Agreement was for a period of one year, which she could terminate at any time without a reason.  Def.'s Supp. App. 72.  Omnitrition eventually revised the Handbook, extending the Non-Compete Agreement from two months to one year and extending the Non-Solicit agreement from one year to two years.  Moser Decl. ¶ 15, Pl.'s Supp. App. 180.  Several Omnitrition distributors, who later became plaintiffs in this action, resigned as a result of these changes.  *Id.*

On August 12, 2016,  Omnitrition's Chief Executive Officer Roger Daley ("Mr. Daley") held a recorded national conference call, during which he explained why Ms. Whitehair was terminated from the company.[4]  *See* Tr. Aug. 16, 2016 Conf. Call, Pl.'s Supp. App. 240-45.  He also made comments about former distributors and their ability to bring in business for the company.  *See id.* at 243.  Mr. Daley also discussed communications from former distributors' attorneys and Omnitrition's response to that correspondence.  *See id.* at 241-242.  Additionally, he discussed Ms. Whitehair's new venture and how she intended to collect from Omnitrition while starting the new business.  He then told participants on the call:

---

[4] Ms. Ruff asserts that Ms. Whitehair was terminated for alleged violations of the Handbook.  Omnitrition does not dispute this assertion.

Everybody that wants to go with Heidi, please go because we don't want you here. There's no room for you here.  We're Omnitrition distributors and we're going to remain Omnitrition distributors. And if you get in our way, you heard what the lawyer said, we'll go after you. I'll see you in court. I'm not going to let that happen again.

*Id.* at 244.  He later states:

So, yeah, you guys go, turn in your resignation, go get it notarized because you don't want to get terminated.  That will follow you everywhere you go.  You don't want that record.  You love Heidi, go with her. You have my blessing.

*Id.*

Former distributors, including Ms. Ruff, perceived Mr. Daley's comments as a threat by Omnitrition to anyone who continued to associate with Ms. Whitehair or her downline.  *See e.g.* Ruff Dep., Pl.'s Supp. App. 158-59; Cashin Dep., *id* at 259-60; Devlin Decl. ¶ 4, *id.* at 262.  At no point during the call did Mr. Daley mention Ms. Ruff by name or make any specific comments toward her.  *See* Pl.'s Supp. App. 238-45.

Following the conference call, Omnitrition distributors and employees, including the Ethics and Compliance Administrator and Mr. Daley's daughter, Lisa Nagler ("Ms. Nagler"), made negative comments on social media about Ms. Whitehair and her "inner circle."  *See* Aldrich Decl. ¶ 4 , Pl.'s Supp. App. 257-58.

On August 18, 2016, Ms. Ruff resigned from Omnitrition, citing the unilateral policy changes as her reason for resigning.  Def.'s Supp. App. 73.  Following her resignation, she was blocked from the company-controlled Facebook pages.  Ruff Dep., Pl.'s Supp. App. 166.  She admits, however, that she had no expectation that she would maintain access to Omnitrition's Facebook pages.  Ruff Dep., Def.'s Supp. App. 31.

Also following Ms. Ruff's Resignation, Ms. Nagler publicly posted a private message between her and Ms. Ruff on Facebook, which led to other Omnitrition distributors making

negative comments about her, including individuals in Ms. Ruff's downline. Nagler Dep., Pl.'s Supp. App. 81-84, 145-46. Omnitrition acknowledged that some of the Facebook posts against former distributors may have been "out of line" and that it had conversations with select individuals concerning their conduct. Jordan-Alvarado Dep., Pl.'s Supp. App. 20-22. It did not, however, address with Ms. Nagler[5] her social media posts, as it believed there was no need to do so. *Id.*

In October 2016, Ms. Ruff joined Innov8tive Nutrition ("Innov8tive"), a new MLM company started by Ms. Whitehair. In the Spring of 2017, Mr. Daley and Ms. Nagler encouraged Michael Morris ("Mr. Morris"), an Omnitrition distributor, to disclose information on social media about a laboratory study of Omnitrition's products. Morris Decl. ¶ 5, Pl.'s Supp. App. 248. Mr. Morris also made posts on former Omnitrition distributors' personal and business Facebook pages, stating that the now-Innov8tive distributors had been "scammed." Additionally, he discouraged people from working with or associating with Innov8tive distributors and, instead, encouraged them to return to Omnitrition. *See* Pl.'s Supp. App. 183-207. Mr. Morris did not make any disparaging or inflammatory posts on Ms. Ruff's Facebook page because she had blocked him. Ruff Dep., Def's Supp. App. 36-38.

On September 6, 2016, Ms. Ruff, along with thirteen former Omnitrition Distributors,[6] filed this action against Omnitrition asserting several claims.[7] Plaintiffs filed their Amended

---

[5] In the deposition of Cindy Jordan-Alvarado, Ms. Jordan-Alvarado refers to Ms. Nagler as Ms. Daley; however, the court notes that these persons are the same individual.

[6] The thirteen former Omnitrition Distributors who originally joined in this action are: Cynthia Moser, Paula Moser, Alise Christensen, Julie Guenther, Jessica Palvey, Mandy Hafner, Melanie Hoff, Sarah Laree Allen, Teresa Berlin, Shellianne Gitchel, Sunshine Heldstab, Jacquelynn Ennis, and Danielle Wallgren. As noted later, these persons are no longer parties to this action.

[7] Plaintiffs asserted the following claims: (1) declaratory judgment; (2) breach of contract; (3) violations of the Texas Theft Liability Act; (4) business disparagement; (5) tortious interference with business relationships; and (6) violations of the Lanham Act.

Complaint[8]  (Doc. 18) on March 20, 2017.  In Omnitrition's Answer to the Amended Complaint (Doc. 25), filed March 25, 2017, it asserted several counterclaims against all Plaintiffs, which include the following claims: (1) breach of contract; (2) tortious interference with contracts and prospective business relations; (3) Defense of Trade Secrets Act under 18 U.S.C. § 1836; (4) misappropriation under the Texas Uniform Trade Secrets Act ("TUTSA"); (5) aiding and abetting, and concerted action; and (6) conspiracy.  It also seeks attorney's fees and injunctive relief.

On August 26, 2019, Plaintiffs filed their Second Amended Complaint (Doc. 44), which is the live pleading.  The only claims remaining in the Second Amended Complaint are the following: (1) declaratory judgment; (2) breach of contract; and (3) tortious interference with business relationships. On September 6, 2019, Omnitrition filed its Answer to Plaintiff's Second Amended Complaint.[9]

On September 16, 2019, the parties, including Ms. Ruff, filed a Joint Stipulation of Dismissal (Doc. 52), dismissing with prejudice Plaintiffs' claim for declaratory judgment.  The following day, Omnitrition filed a Motion to Exclude Expert Testimony (Doc. 54) and a Motion for Partial Summary Judgment (Doc. 55), both of which are pending before the court.

---

[8] In the Amended Complaint, Plaintiffs no longer asserted their claim for violations of the Texas Theft Liability Act. All other claims remained.

[9] Defendant did not reassert its counterclaims in response to Plaintiff's Second Amended Complaint (Doc. 44), which is the live pleading.  The court notes, however, that Plaintiff filed an Answer to the Counterclaims (Doc. 29) and Defendant seeks a motion for partial summary judgment with respect to Ms. Ruff's claims only. Additionally, the Joint Stipulations of Dismissal (Docs. 75-78) state that the claims and counterclaims with respect to the former plaintiffs are dismissed with prejudice. The magistrate judge, in ruling on the parties' discovery matters, also acknowledged that the claims and counterclaims between Ms. Ruff and Omnitrition remain pending.  Doc. 79. Further, Ms. Ruff has never filed a motion to strike the counterclaims and has proceeded as if they are still before the court. Thus, the court determines that Omnitrition has demonstrated its intent to maintain these counterclaims despite its failure to replead them in response to the Second Amended Complaint, and, accordingly, Omnitrition's counterclaims remain pending. *See Schutt a/n/f for A.S. v. Garland Indep. Sch. Dist.,* No. 2:17-CV-1708-B, 2019 WL 3006768, at *2-3 (N.D. Tex. July 9, 2019) (citation omitted).

On February 6, 2020, thirteen of the Plaintiffs, in conjunction with Omnitrition, filed Joint Stipulations of Dismissal (Docs. 75-78), dismissing with prejudice all remaining claims and counterclaims against them.  Accordingly, only the claims and counterclaims asserted by and against Ms. Ruff remain.

On February 11, 2020, the court held a status conference regarding settlement efforts between the remaining parties, and, in a subsequent order (Doc. 81), ordered the parties to file supplemental summary judgment briefing focusing solely on the facts and evidence related to Ms. Ruff.  Both parties filed their supplemental briefing on February 25, 2020.[10]  Docs. 83 & 84.  On March 3, 2020, Omnitrition filed an Objection (Doc. 87) to additional evidence filed in Ms. Ruff's supplemental appendix, and, on March 10, 2020, Ms. Ruff filed her Response to that Objection. Doc. 88.

## II.   Legal Standard - Motion for Summary Judgment

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.

---

[10] The parties agreed on the February 11, 2020 teleconference to file simultaneously their supplemental briefing.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence and, thus, are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are

"irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    Discussion

### A.    Plaintiff's Breach of Contract Claim

#### 1.    Parties' Contentions

Ms. Ruff alleges that Omnitrition breached provisions of the Handbook by "fail[ing] to follow its own rules and regulations by selective enforcement of the rules and regulations concerning social media posting, use of company logos[,] and ethics obligations imposed on all distributors." Pl.'s Sec. Am. Compl. ¶ 47. Defendant contends that it is entitled to summary judgment on this claim because Plaintiff fails to meet the essential elements of the claim.

To defeat summary judgment on the breach of contract claim, Ms. Ruff must establish that a genuine dispute of material fact exists as to each element of her breach of contract claim. Under Texas law, the elements of a breach of contract claim are: "'(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th] 2005, pet. denied)).

Omnitrition asserts that Ms. Ruff's breach of contract claim fails as a matter of law because she fails to show that it breached the Agreement or Handbook, or that she suffered any damages as a result of the alleged breach. Specifically, it contends that Ms. Ruff fails to cite any evidence that it breached the Agreement or Handbook *before* she voluntarily resigned in August 2016 but,

instead, she argues that its selective enforcement of the Ethics Rules constitutes a breach. Additionally, it contends that Ms. Ruff's assertion that the result of its alleged conduct "was to destroy many of [her] Omnitrition downlines before she even resigned from Omnitrition" is conclusory and unsupported by any evidence. Def.'s Supp. Br. 13 ¶ 20.

Omnitrition also highlights that Ms. Ruff asserts that the Facebook posts by Ms. Nagler violate Ethics Rules A-1 and A-2 and further highlights that these posts were made *after* Ms. Ruff voluntarily resigned from the company, which she admits, when there was no longer a contractual agreement between the parties. Consequently, Omnitrition asserts that, even assuming the posts were somehow harmful, such posts "could not have been a breach of contract." Def.'s Supp. Br. 13. Thus, Omnitrition contends that Ms. Ruff cannot survive summary judgment, as she has failed to create a genuine dispute of material fact that it breached any portion of the Agreement or Handbook.

Alternatively, Omnitrition asserts that, even assuming such breach of contract occurred, Ms. Ruff has submitted no evidence that the alleged breach was material or caused any injury. Specifically, it contends:

> Plaintiff cannot show that – if Omnitrition selectively enforced rules and regulations related to social media posting, use of company logos, and ethics obligations imposed on all distributors – there was a natural probable and foreseeable injury to Plaintiff resulting from any selective enforcement of the Handbook entitling her to "retirement income."

*Id.* 14 ¶ 23. First, Omnitrition contends that Ms. Ruff is not entitled to damages because she voluntarily resigned, and, pursuant to the Handbook, she is not entitled to further compensation after her date of resignation.

Second, Omnitrition asserts that Ms. Ruff cannot point to any evidence supporting a breach by Omnitrition before she resigned, for which she claims damages. Finally, it contends that despite

**Memorandum Opinion and Order – Page 10**

Ms. Ruff's assertions that she was constructively discharged and, thus, entitled to retirement income, the evidence shows that she voluntary resigned.  Additionally, it asserts that the Handbook does not provide for residual or "retirement" income.  Although Ms. Ruff asserts that she is an independent contractor who was constructively discharged and seeks to recover retirement income as a result, Omnitrition contends that she is not entitled to recover such damages and "cannot manufacture a claim for 'retirement income'" by making such assertion.  Def.'s Supp. Br. 17. Specifically, Omnitrition contends that Ms. Ruff, as an independent contractor, cannot bring a claim for constructive discharge.  In support of this proposition, Omnitrition cites *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, which held that the plaintiff did not "present any argument to review that an independent contractor could be constructively discharged." *Id.* at 16 ¶ 30 (citing 418 S.W.3d 172, 199 (Tex.App.—Dallas 2013, no pet.)). Omnitrition further asserts that it "is aware of no authority under Texas law providing that independent contractors may be constructively discharged." *Id.* at 16 ¶ 31.  Thus, for the reasons discussed, Omnitrition asserts that Ms. Ruff's claim for breach of contract also fails with respect to the element of damages.

In Ms. Ruff's Supplemental Response Brief (Doc. 83), she contends that she has met each element of her breach of contract claim and supports her assertion as follows:

1.  The Plaintiffs and Omnitrition were parties to a Distributorship Agreement and Rules and Regulations/Handbook that defined the relationship and responsibilities of each party[;]
2.  Omnitrition was bound to enforce its rules and regulations for the protection of distributors and their downlines[;]
3.  Omnitrition failed to enforce its policies and itself engaged in conduct in violation of its ethical rules in an effort to destroy or misappropriate the Plaintiff's downline relationships[; and]
4.  Plaintiff was damaged as a result.

Pl.'s Supp. Resp. Br. 16.

**Memorandum Opinion and Order – Page 11**

With regard to Omnitrition's assertion that Ms. Ruff presents no evidence supporting her breach of contract claim, she contends that it is the *absence* of evidence that supports her claim. Specifically, she contends that despite Omnitrition's acknowledgement that "inflammatory" and damaging posts were made by its distributors and employees, it did nothing to remind these individuals of their obligation to comply with the Ethics Rules or try to enforce them. Thus, she asserts that both Omnitrition distributors and employees were allowed to violate the Ethics Rules without consequence, and that the "result of Omnitrition's conduct was to destroy [her] downline before [she] even resigned." *Id.* at 17.

Ms. Ruff also asserts that Omnitrition's alleged breach of the Ethics Rules constitutes a breach of contract, as "the Handbook expressly states that Omnitrition is responsible for enforcing its ethics rules," and, thus, it is obligated to enforce its rules and regulations to protect its distributors' downlines. *Id.* at 18. Specifically, she asserts that Mr. Daley's comments on the August 12, 2016 conference call about Ms. Whitehair, former distributors, and those associated with her, and subsequent social media posts and comments by Ms. Nagler and other Omnitrition distributors and employees damaged the relationships she built with her downline.

With regard to damages, Ms. Ruff asserts that "there is more than sufficient evidence to create a fact issue on the foreseeability of [her] damages." *Id.* at 19. She asserts that it is undisputed that her downline, which she has spent "countless hours and resources to develop," has value. *Id.* Thus, Ms. Ruff contends that "there is clearly a natural or 'foreseeable' injury to [her] downlines to the extent Defendant allowed attacks on [former] Plaintiffs to go unchecked in violation of Omnitrition policies." *Id.*

Additionally, Ms. Ruff contends that Omnitrition's focus on her claim for residual income assumes that her downline only has value if she was an Omnitrition distributor. In contrast, she

asserts that she was promised residual income from Mr. Daley and "hoped" to receive it, but, nonetheless, her downline has value and residual income to her outside of Omnitrition. Thus, she asserts that "whether ultimately working at Omnitrition or any other MLM, Omnitrition's actions damaged the 'asset' she had built over many years and in some cases destroyed it." *Id.* at 21.

Ms. Ruff also disputes Omnitrition's argument that constructive discharge does not apply to independent contractors. Specifically, she contends that: (1) the court in *Berryman* did not make a specific determination that constructive discharge does not apply to independent contractors; and (2) regardless of whether she resigned or was terminated, she is seeking relief for the damage caused to her downline by Omnitrition's failure to enforce its Ethics Rules. Thus, she contends that she seeks more than just residual income as relief for the damage caused by Omnitrition's alleged breach of contract. For these reasons, Ms. Ruff asserts that a genuine dispute of material fact exists related to causation of damages and, thus, the court should deny summary judgment on her breach of contract claim.

### 2.    *Analysis*

After consideration of the parties' arguments and the evidence presented, the court determines that Ms. Ruff has failed to demonstrate that a genuine dispute of material fact exists as to her breach of contract claim. There is no dispute that the parties had a valid contract, as evidenced by the Agreement and Handbook, before Ms. Ruff resigned as an Omnitrition distributor on August 18, 2016. Ms. Ruff, however, alleges that Omnitrition's conduct before *and* after her resignation constitutes a breach of the Ethics Rules. Thus, the court must address several issues in determining whether Ms. Ruff has met her burden including: (1) whether Omnitrition's conduct before her resignation constitutes a breach of contract; and (2) whether a valid contract between the parties existed after her resignation, and, if so, whether Omnitrition's conduct at that time constitutes a breach.

First, the sole premise for Ms. Ruff's breach of contract claim is that Omnitrition *selectively enforced* the Ethics Rules outlined in the Handbook.  Omnitrition does not dispute that selective enforcement occurred, and the evidence further supports Ms. Ruff's assertion.  She fails, however, to present any evidence that selective enforcement alone constitutes a breach.  Even if the court determined that Omnitrition's selective enforcement was a breach of contract, Ms. Ruff fails to show that Omnitrition's alleged breach specifically related to her.  Instead, she highlights conduct by Omnitrition before her resignation that was directed at Ms. Whitehair and other distributors. Ms. Ruff relies heavily on comments made during the August 12, 2016 conference call by Mr. Daley about Ms. Whitehair and Ms. Guenther, but, upon review of the call transcript, none of Mr. Daley's statements mentioned Ms. Ruff or was directed at her specifically.  Instead, she asserts that the general attacks made about those "associated" with Ms. Whitehair were also attacks on her as a member of Ms. Whitehair's downline.

While the court acknowledges that Ms. Ruff was part of Ms. Whitehair's downline, she fails to cite any evidence that Mr. Daley's comments about Ms. Whitehair, or his suggestion that people who support Ms. Whitehair follow her to her new venture, were directed at her specifically or that anyone, at the time those comments were made, associated those comments with Ms. Ruff. Further, Ms. Ruff has failed to demonstrate how Mr. Daley's comments on the conference call were a breach of her contract with Omnitrition. At most, Ms. Ruff suffered the residual consequences of Omnitrition's conduct against others before her own resignation.  The court, or a reasonable jury, however, cannot reasonably infer that Omnitrition's alleged breach of contract with respect to other individuals also applies to Ms. Ruff by association, as she fails to present any competent summary judgment evidence in support of that assertion, and making such an inference would be based merely on conjecture and speculation. Thus, the court determines that Ms. Ruff

has failed to prove, or demonstrate that a genuine dispute of material fact exists, that Omnitrition breached the Agreement or Handbook before she resigned by failing to enforce its Ethics Rules.

Second, Ms. Ruff points to the conduct of Omnitrition's distributors and employees after her resignation as another basis for her breach of contract claim.  It is undisputed that Ms. Nagler made social media posts, which were meant as an attack on Ms. Ruff soon after her resignation. Ms. Ruff, however, provides no evidence or assertion that she was still protected by the Ethics Rules of the Handbook after her resignation.  Without such assertion or evidence, Ms. Ruff has failed to prove, or establish a genuine dispute of material fact, that Omnitrition was bound by the Agreement or Handbook, specifically, the Ethics Rules, *after* her resignation.  Thus, the court determines that Ms. Ruff has failed to establish that a valid contract existed between the parties after August 18, 2016.  Without a valid contract between the parties after Ms. Ruff resigned, Omnitrition's conduct cannot be construed as a breach of contract. Accordingly, Ms. Ruff's breach of contract claim fails as a matter of law, and Omnitrition is entitled to summary judgment on this claim.

To the extent Ms.  Ruff alleges that she was constructively discharged due to Omnitrition's unilateral policy changes, the court determines that this assertion lacks merit.  It is undisputed that Ms. Ruff was an independent contractor.  Thus, under Texas law, she cannot bring a claim for constructive discharge, as that cause of action applies only to *employees* who felt compelled to resign because of intolerable work conditions.  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480 (5th Cir. 2008) (citing *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)).  Ms. Ruff cites no authority to the contrary.  Accordingly, as Ms. Ruff was an independent contractor with Omnitrition, she is not entitled to bring a claim for constructive discharge, and her claim fails on this basis.

As the court determines that Ms. Ruff's claim for breach of contract fails for the reasons stated, the court need not address whether she satisfied the damages element of the claim.

### B.    Tortious Interference with Existing Contracts

Ms. Ruff asserts claims for tortious inference with existing contracts and tortious interference with business relations.[11]

### 1.    Parties' Contentions

Omnitrition contends that it is entitled to summary judgment on both tortious interference claims.  With regard to tortious interference with existing contracts, it asserts that Ms. Ruff fails to identify any existing contracts that would have been negatively affected by its alleged conduct, and, even assuming such contracts existed, Ms. Ruff provides no evidence that any alleged interference was willful or intentional.  First, it highlights that Ms. Ruff provides no evidence that it interfered with any contractual relationships she had before she resigned, immediately after her resignation, or once she joined Innov8tive.  Without evidence of an existing contract subject to interference, Omnitrition asserts that Ms. Ruff has failed to establish that a genuine dispute of material facts exists regarding the first element of a claim for tortious interference with existing contracts.

Second, even if Ms. Ruff could prove that an existing contract subject to interference existed, Omnitrition contends that she has failed to establish a genuine dispute of material fact that it willfully and intentionally interfered with such contracts.  Considering Mr. Daley's comments on the August 12, 2016 conference call, Omnitrition asserts that she fails to explain why former distributors would assume she was an associate of Ms. Whitehair or Ms. Guenther when she was

---

[11] In the Second Amended Complaint (Doc. 44), Ms. Ruff asserts a claim for tortious interference with business relationships, but she does not specify whether the alleged interference was with existing contracts or prospective business relations. Omnitrition, however, addresses both potential claims, and, thus, the court will do the same.

not named or alluded to during the call.  Additionally, it asserts that Ms. Ruff fails to cite evidence explaining how being blocked from the company-controlled Facebook pages or Ms. Nagler's post about her integrity and decision to resign interfered with any existing contract.  Thus, Omnitrition also asserts that she fails to raise a genuine dispute of material fact regarding the second element of her claim for tortious interference with existing contracts.

Finally, assuming Plaintiff could meet her burden on the first two elements, Omnitrition asserts that her claim nevertheless fails, as she "cannot show that any purported tortious interference with an existing contract proximately caused her any damage[s], or that she suffered actual damages or loss." Def.'s Supp. Br. 20 ¶ 42.  Moreover, it contends that Ms. Ruff's assertion that "the MLM industry is relationship driven and the loss translates into a loss to the distributor's business as a whole," is insufficient to support her claim for damages, as she cannot point to any specific lost sales.  For these reasons, Omnitrition asserts that Ms. Ruff's claim for tortious interference with an existing contract fails as a matter of law, and, accordingly, it is entitled to summary judgment on this claim.

In response, Ms. Ruff contends that Omnitrition's assertion that she had no existing contracts at the time of its alleged interference assumes that the purported interference is limited to its conduct in 2016.  She asserts, however, that she also seeks relief based on the conduct of Mr. Morris in the Spring of 2017.  With respect to Omnitrition's 2016 conduct, Ms. Ruff asserts that, although she was not mentioned specifically on the August 12, 2016 call, former distributors confirmed that the attacks on Ms. Whitehair and those associated with her influenced them not to associate or have future business with Ms. Whitehair's associates, including Ms. Ruff.  She further asserts that the Facebook posts by Ms. Nagler following her resignation from Omnitrition repeatedly singled her out, interfered with her business with Innov8tive, and gave the appearance

that the company itself was questioning her integrity, calling her a coward, and "poisoning" many individuals in her downline.

With respect to Mr. Morris's 2017 Facebook posts, Ms. Ruff asserts that he admitted that he intentionally interfered with and attacked Innov8tive distributors through calculated Facebook posts at the direction of Omnitrition. She further contends that these posts encouraged distributors as well as their family and friends to leave Innov8tive and return to Omnitrition, and that these posts were intended to interfere with Innov8tive's business relations. Moreover, at the time of Mr. Morris's Facebook posts, Ms. Ruff contends that she was already a distributor with Innov8tive and had existing agreements with Innov8tive as well as contractual obligations with its distributors. Thus, she asserts that Mr. Morris's conduct, which was directed at Innov8tive, interfered with her existing contracts with the company as well.

In support, she asserts that Mr. Morris's social media attacks, which occurred during a critical time in the growth of Innov8tive, sparked concern with its distributors' downlines, including Ms. Ruff's, and, ultimately, affected her sales and commissions. Further, Ms. Ruff contends that she does not have to prove any specific lost sale as damages because the MLM industry is relationship driven, and the losses experienced by Innov8tive that resulted from Mr. Morris's conduct also affected her. Accordingly, Ms. Ruff contends that Omnitrition is not entitled to summary judgment on her claim for tortious inference with existing contracts.

### 2. Analysis

To defeat summary judgment on her claim for tortious interference with existing contracts, Ms. Ruff must prove, or raise a genuine dispute of material fact as to each of the following elements: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference with that contract; (3) that the interference proximately caused her injury; and (4) that

**Memorandum Opinion and Order – Page 18**

the interference caused actual damages or loss.  *Prudential Ins. Co. of America v. Financial Review Serv., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (citations omitted).

With respect to the statements made on the August 2016 conference call and Ms. Nagler's targeted social media posts after Ms. Ruff's resignation, Ms. Ruff fails to demonstrate that this conduct interfered with any existing contract that she had at the time.  First, at the time Mr. Daley made remarks about Ms. Whitehair and Ms. Guenther on the August call, Ms. Ruff's only existing contract, based on the evidence presented, was her contract with Omnitrition.  Thus, the only existing contract Ms. Ruff had subject to interference was her contract with Defendant, but a party cannot be held liable for interfering with its own contract.  *Community Health Sys. Prof'l Serv. Corp. v.* Hansen, 525 S.W.3d 671, 690 (Tex. 2017).  Ms. Ruff cites no authority or case law to the contrary.  Without evidence of any other existing contract subject to interference, Ms. Ruff's claim for tortious interference with an existing contract fails as a matter of law.

In an attempt to circumvent this issue, however, Ms. Ruff presents several declarations from former Omnitrition Distributors stating that they stopped doing business with Omnitrition and former named Plaintiffs due to Omnitrition's unprofessional conduct.  Despite her reliance on these declarations, only two of them, those of Stacey Moses ("Ms. Moses") (Pl.'s Supp. App. 86) and Cori Rose ("Ms. Rose") (Pl.'s Supp. App. 269), mention Ms. Ruff.  Ms. Moses's Declaration adds nothing to Plaintiff's argument.  In Ms. Rose's Declaration, however, she states that Ms. Ruff was in her upline until Ms. Ruff resigned in 2016, and "[b]ecause of the posts made by Omnitrition and its distributors about those that left, [she] made the decision that [she] did not want to sell for or promote Omnitrition."  Pl.'s Supp. App. 269 ¶¶ 3, 5.  She further states that "[t]he attacks by Omnitrition and Omnitrition distributors against distributors [she] knew and liked has soured and disillusioned [her] to building a business again[—]even with Lori Ruff."  *Id.* at 269-70 ¶ 6.  There

**Memorandum Opinion and Order – Page 19**

is no indication, however, that Omnitrition's conduct had any effect on the existing contract or relationship between Ms. Rose and Ms. Ruff at the time of the August 2016 conference call, especially since Ms. Rose admits that she remained in Ms. Ruff's downline until Ms. Ruff resigned, which was after the call.  Thus, the court determines that there was no interference with regard to the contract or business relationship between Ms. Ruff or Ms. Rose, as their relationship continued until Ms. Ruff resigned from Omnitrition.

Additionally, neither Ms. Ruff nor Ms. Rose states that there was an existing contract between the two of them at the time of Ms. Nagler's Facebook posts after Ms. Ruff's resignation. Moreover, Ms. Ruff acknowledges that at the time of Ms. Nagler's posts, she had not joined another MLM company and had expressed no intention of doing so at that time.  Accordingly, Ms. Ruff fails to present any evidence of an existing contract that was interfered with by either Mr. Daley's comments on the conference call or Ms. Nagler's social media posts immediately following her resignation. Thus, Ms. Ruff fails to establish that a genuine dispute of material fact exists regarding Omnitrition's 2016 conduct with respect to the first element of her claim for tortious inference with an existing contract.

The court also determines that Ms. Ruff's reliance, in support of her tortious interference with existing contracts claim, on Mr. Morris's social media attacks on Innov8tive in the Spring of 2017, fails for the same reasons previously discussed.  Ms. Ruff contends that Mr. Morris's Facebook posts, which targeted former Omnitrition distributors and customers who joined Innov8tive, were orchestrated by Omnitrition to intentionally attack Innov8tive and interfere with its business. Her contentions are supported by Mr. Morris's admissions in his declaration, in which he states:

> I was encouraged by Lisa Daley[12] and Roger Daley to post negative information about Innov8tive and the lawsuits[,] including to target distributors and individuals that were not distributors that were associated with one or more of the Plaintiffs in the Whitehair and Moser lawsuits.  Again, I understood the purpose of the posts was to discourage individuals from associating or doing business with Innov8tive distributors and specifically distributors that had sued Omnitrition.

Morris Decl. ¶ 6, Pl.'s Supp. App. 248.  He further  states that Ms. Daley told him that Omnitrition would "have his back" or "words to that effect since Omnitrition had instructed and encouraged [him] to make the posts."  *Id*. ¶ 7, Pl.'s Supp. App. 248-49.

There is no question that Mr. Morris's conduct was intended to interfere with Innov8tive's business, but Ms. Ruff fails to show that Mr. Morris's conduct interfered with any of her specific contracts.  Instead, she contends that "the MLM industry is relationship driven and the losses caused by [Mr.] Morris to Innov8tive no doubt impacted Ms. Ruff."  Pl.'s Supp. Br. 25.  While this may be true, her failure to highlight any specific contract between her and a third-party that was affected by Mr. Morris's social media attacks makes her claim fail as a matter of law.

Additionally, despite her reliance on the declarations of former distributors, none of the individuals or Ms. Ruff makes any assertion that they had an existing contract or business relationship at the time of Mr. Morris's alleged interference.  To overcome this deficiency, she asks the court to impute any alleged harm to Innov8tive to her personally without addressing a specific contract with which Omnitrition interfered.  The court cannot take such a leap based purely on hypothetical losses and speculation.

While the court understands that the MLM business is built on relationships, the elements of a tortious interference with an existing contract claim remain unchanged.  Without more, Ms. Ruff again fails to demonstrate that a genuine dispute of material fact exists with respect to her tortious interference with existing contracts claim. Moreover, Ms. Ruff fails to raise a genuine

---

[12] Lisa Daley refers to Lisa Nagler.

**Memorandum Opinion and Order – Page 21**

dispute of material fact that Mr. Morris's conduct constitutes a willful and intentional act of inference with any of *her* existing contracts, as she admits that Mr. Morris never attacked her directly because she had blocked him on Facebook.  Ruff Dep., Def.'s Supp. App 37-38.

As Ms. Ruff fails to establish that a genuine dispute of material facts exists with respect to her claim for tortious interference with an existing contract, the court determines that her claim fails as a matter of law, and, thus, Omnitrition is entitled to summary judgment on this claim.

### C.      Tortious Interference with Prospective Business Relationships

#### 1.      *Parties' Contentions*

Omnitrition contends that it is entitled to summary judgment on Ms. Ruff's claim for tortious interference with prospective business relationships because she "cannot prove that she had a 'reasonable probability' of entering into any prospective contract at the time of the alleged interference."  Def.'s Supp. Br. 21 ¶ 44.  Omnitrition contends that, despite Ms. Ruff's allegation that it interfered with her prospective relationship with Innov8tive, she acknowledged that she had "no inkling she would be going to work with Innov8tive at the time of the August 12 conference call, at the time of the purported [social media] messages in August 2016, or immediately after resigning from" the company.  *Id.* at 21 ¶ 45.  It further asserts that Ms. Ruff "had no prospective business relationships related to Innov8tive for more than one month after" the alleged interference giving rise to her claim, and, thus, it could not interfere with relationships that Plaintiff did not even know of at the time of the alleged interference in 2016.

Omnitrition asserts that Ms. Ruff also cannot prove that it intentionally interfered with a continuous business relationship or other customary contract that did not amount to a formal agreement.  Specifically, it contends that for any alleged interference to be intentional, Ms. Ruff must raise a genuine dispute of material fact establishing that it had actual knowledge of any

prospective contract or business relation the subject of that interference, which it asserts she fails to do. It also asserts that Ms. Ruff did not know what prospective contracts or business relations she would have after she resigned from the company, so it could not have known either. Thus, Omnitrition asserts that it has negated the first element with respect to Ms. Ruff's tortious interference with prospective business relations claim.

Omnitrition further contends that Ms. Ruff "has no evidence of any conduct by Omnitrition that would be actionable as an independent tort." *Id.* at 23 ¶ 49 (internal quotations omitted). Specifically, it asserts that despite Ms. Ruff's allegations that "messages concerning [her] integrity and decisions to resign were broadcast," she fails to explain how the content of those messages constitutes an independent tort or highlight the prospective relations that were reasonably certain. Moreover, it notes that such comments may be unethical or unfair, but they are not actionable as an independent tort, even to the extent Ms. Ruff argues they were "nasty," because conduct that is merely unethical or unfair is not actionable.

Additionally, Omnitrition asserts that Ms. Ruff cannot attribute any lost sales to its purported interference. Thus, it contends that Ms. Ruff's claim for tortious interference with prospective business relations fails as a matter of law, and, therefore, it is entitled to summary judgment with respect to this claim.

In response, Ms. Ruff contends that, despite Omnitrition's focus in its 2016 conduct, the purported interference also includes Mr. Morris's conduct in early 2017 after she joined Innov8tive. Ms. Ruff also contends that Omnitrition's "conduct is actionable regardless of whether she had 'landed' at [her] next MLM [company]." Pl.'s Supp. Br. 26. In support, she asserts that the core issue is the value of her downline relationships, which were relationships built with her own time, money, and resources. Additionally, she asserts that "there was no question that [she]

would be going to another MLM," and that Mr. Daley and Ms. Nagler expressed their concern on the August 2016 conference call and subsequent social media posts that other Omnitrition distributors would follow Ms. Whitehair and others to her new venture. Thus, she contends that "the fact that [she] had not officially signed up with another MLM at the time does not lessen the damage inflicted on [her] downline by Omnitrition." *Id.* at 26.

Ms. Ruff further contends that the transcript of the conference call shows Mr. Daley's knowledge that Ms. Whitehair was leaving for another venture, which is why he and his daughter made their attacks and encouraged others to join in to dissuade distributors from leaving Omnitrition. She also asserts that these comments were directed at individuals with existing relationships with her and, but-for Omnitrition's conduct, they would have continued to work with her at Innov8tive or beyond.

With regard to whether Omnitrition's alleged conduct is independently tortious, Ms. Ruff asserts that Ms. Nagler's comments on social media and Mr. Morris's direct attacks on friends and former distributors associated with her constitute multiple torts in Texas, such as:

> (1) fraudulent misrepresentation (statements by Michael Morris on Facebook regarding Innov8tive) [;] (2) conversion/misappropriation (Plaintiff's downline relationships); (3) defamation/business disparagement (calling Innov8tive a "scam" and Ms. Ruff a "coward" and lacking "integrity"); and (4) unfair competition—not to mention ancillary claims of conspiracy based on Omnitrition's use of its distributors like Mr. Morris as weapons against Innov8tive distributors.

*Id.* at 27.

Ms. Ruff also refutes Omnitrition's assertion that she cannot show any lost sales as a result of its alleged conduct and contends that the declarations of former Omnitrition distributors rebut this contention. Specifically, she asserts that the declarations demonstrate that former distributors were discouraged from associating with her and former Plaintiffs as a result of Omnitrition's conduct and did not do so for years. Thus, she asserts that her losses are not only limited to her

business opportunities with Innov8tive but also losses that have continued at other MLM companies because distributors have refused to follow her.  In support of her damages, Ms. Ruff relies on the testimony and opinions of Allyn Needham, who opined that her income has never recovered since she resigned from Omnitrition due to the relationships lost as a result of Omnitrition's conduct. [13]  She also reiterates that lost relationships in the MLM industry means lost income.

>    2.    *Analysis*

To overcome summary judgment on her claim for tortious interference with prospective business relations, Ms. Ruff must establish that a genuine dispute of material fact exists as to the following elements:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).  A plaintiff need not prove that the contract would have certainly been made but-for the alleged interference. Instead, it must have been reasonably probable that the prospective contract or business relationship would have resulted but-for the alleged interference, considering all of the facts and circumstances surrounding that transaction.  *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475-76 (Tex.App.—Houston [1st Dist.] 2006, pet. denied) (citing *Hill v. Heritage Resources*, 964 S.W.2d 89, 109 (Tex.App.—El Paso 1997)).  Moreover, more than mere

---

[13] Omnitrition has a Motion to Exclude Expert Testimony (Doc. 54) that seeks to exclude the testimony and opinions of Mr. Needham and objects to consideration of this testimony for purposes of summary judgment.

negotiations must have occurred.  *Id.* at 475 (citations omitted). Additionally, "if a plaintiff succeeds in establishing causation, [she] must show with reasonable certainty the *amount* of harm caused: 'There can be no recovery for damages that are speculative or conjectural.'"  *Hill v. Anderson*, 420 F. App'x 427, 431-32 (5th Cir. 2011) (quoting *U.S. Bank Nat'l Ass'n v. Stanley*, 297 S.W.3d 815, 822 (Tex.App.—Houston[14th Dist.] 2009)).

The court determines that Ms. Ruff has failed to establish that a genuine dispute of material fact exists with respect to her claim for tortious interference with prospective relations. First, Ms. Ruff asserts that, although she was still with Omnitrition at the time of the August 12, 2016 conference call, Mr. Daley knew that she would likely follow Ms. Whitehair to her new company. The court disagrees.  Any comments made concerning distributors leaving for another venture were merely assumptions made by Mr. Daley and cannot reasonably be understood to refer to Ms. Ruff, as she had not yet resigned from the company and had expressed no intent of joining another MLM company at the time.

Ms. Ruff then asserts that Mr. Daley's conduct during that call is actionable even though she had not "landed" at her next position because the MLM industry is built on relationships, and his comments during the call affected any prospective contracts or business relationships she may have after she left Omnitrition.  This argument, however, is speculative and conclusory because she fails to identify any prospective contract or business relationship that was reasonably certain to occur and was affected at the time the comments during the conference call were made.  Instead, she asks the court to consider the many declarations from former Omnitrition distributors who unfriended her and would not associate with her for years because of Omnitrition's conduct.  Ms. Ruff, however, inflates the relevance of these declarations, as only two refer to her specifically, and neither one presents any assertion, much less evidence, that but-for Omnitrition's conduct

**Memorandum Opinion and Order – Page 26**

there was a reasonable probability that their business relationships with Ms. Ruff would continue beyond her time with Omnitrition.  Notably, at the time of the conference call, both declarants had existing relationships with Ms. Ruff that continued until her resignation a few days later.

With respect to the social media posts by Ms. Nagler, Ms. Ruff again fails to present any evidence of a prospective contract or business relationship that was certain or substantially certain to occur as a result of the posts at issue.  While Ms. Rose, in her declaration, states that she was "soured and disillusioned" from doing business with Ms. Ruff due to Omnitrition's actions, she provides no indication that her business relationship with Ms. Ruff was certain or substantially certain to occur  at the time of Ms. Nagler's social media posts.  The court notes that the business relationship between Ms. Ruff and Ms. Rose ended when Ms. Ruff resigned from Omnitrition on August 18, 2016—before Ms. Nagler made any inflammatory posts, and Ms. Ruff fails to present evidence of any other contract or business relationship that was reasonably probable at the time of Ms. Nagler's posts.  Moreover, Ms. Ruff fails to raise a genuine dispute of material fact that Ms. Nagler made the posts with a conscious desire to prevent the business relationship between Ms. Ruff and a third-party, or knew with substantial certainty that her actions would result in interference with that relationship, especially when Ms. Ruff had not yet joined another MLM company or venture.  Thus, Ms. Ruff's claim for tortious interference with prospective business relationships fails with respect to Omnitrition's 2016 conduct.

The court further determines that Ms. Ruff's reliance on Mr. Morris's conduct in the Spring of 2017 does nothing to enhance her argument.  Mr. Morris admits in his declaration that his targeted social media posts were encouraged by Ms. Nagler and Mr. Daley to interfere with Innov8tive's business.  Ms. Ruff, however, does not identify any specific prospective business relationship or contract that was affected by Omnitrition's interference while she was with

Innov8tive.  Once again, she contends that the MLM industry is built on relationships and that Omnitrition's conduct against Innov8tive affected her prospective business relationships at any MLM company, but, as previously discussed, such an approach is too broad, general, and speculative to entitle Plaintiff to relief.

Even if the court entertained such an approach, Ms. Ruff only presents evidence of one individual, Ms. Rose, who *may have* continued doing business with her; however, there is no indication that Mr. Morris's conduct had any effect on that potential relationship, or that there was a reasonable probability that Ms. Rose would have entered into a business relationship with Ms. Ruff while she was at Innov8tive. Thus, the court determines that Ms. Ruff has presented no evidence that there was a reasonable probability that she would have entered into a business relationship with a third party at the time of Mr. Morris's targeted Facebook posts.

Although Ms. Ruff contends that relationships are integral to the MLM industry, as the court previously stated, such a general approach, without specifying a specific prospective business relation or contract, fails to satisfy her burden on this claim.  Accordingly, Ms. Ruff fails to present sufficient evidence, or establish that a genuine dispute of material fact exists, that: (1) there was a reasonable probability that she would have entered into a business relationship with a third party, or (2) that Omnitrition interfered with such prospective relationship.  For these reasons, the court determines that Ms. Ruff's claim for tortious interference with prospective business relationships fails as a matter of law, and, therefore, Omnitrition is entitled to summary judgment on this claim.

As the court has determined that Omnitrition is entitled to summary judgment on Ms. Ruff's claim for tortious interference with prospective business relations, it need not determine whether any of the purported interference was independently tortious, or whether Ms. Ruff is

entitled to damages. Additionally, the court need not consider Omnitrition's alternative theory that Ms. Ruff's damages be limited to a one-year period, as summary judgment will be granted in favor of Defendant on all of Plaintiff's claims.

## IV. Defendant's Motion to Exclude and Objections

On March 3, 2020, Omnitrition filed its Objection to Plaintiff's Supplemental Exhibits in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 87), asserting that the inclusion of a damage calculation (Pl.'s Supp. App. 288) and Ms. Ruff's Declaration with attachments (Pl.'s Supp. App. 289-314) in her Supplemental Appendix is untimely. In her Response (Doc. 88), Ms. Ruff asserts that the one-page damage calculation was referenced in the original summary judgment appendix and that her short declaration identified a handful of Facebook posts that were referenced in her deposition, which was also part of the original summary judgment appendix. She also contends that all documents, with the exception of her declaration identifying or authenticating the Facebook posts, were produced in discovery. Thus, Ms. Ruff asserts that the addition of these new materials is minimal and believes that it is consistent with the court's February 11, 2020 order.

After considering the transcript of the February 11, 2020 teleconference and the court's Order of February 11, 2020, the court **sustains** Omnitrition's objection to Ms. Ruff's Declaration and attachments. *See* Pl.'s Supp. App. 289-314. Despite Ms. Ruff's assertions, the court ordered the parties to pare down its summary judgment briefing and appendices to focus only on the facts and evidence relevant to Ms. Ruff. There was no request for leave to add additional information that was not submitted in the original summary judgment appendix. Counsel for Omnitrition raised this issue during the teleconference and agreed to the simultaneous filing of supplemental briefing and did so with the understanding that no new information would be presented to the court.

While the additional Facebook posts may have been presented in discovery, Ms. Ruff did not rely on them in the original summary judgment briefing.  Thus, Omnitrition was not able to address the additional evidence in its supplemental brief.  For these reasons, the court did not consider pages 289-314 of Plaintiff's Supplemental Appendix in ruling on Omnitrition's summary judgment motion.  The court **overrules as moot** Omnitrition's objection to Ms. Ruff's damage calculation (Pl.'s Supp. App. 288), as consideration of this document does not affect the court's ruling on the motion for summary judgment.

Omnitrition also filed a Motion to Exclude Expert Testimony (Doc. 54), seeking to exclude the testimony and opinions of Allyn Needham, Plaintiff's damages expert.  As Ms. Ruff's claims fail on the issue of liability and Mr. Needham's testimony and opinions solely address damages, the court need not consider Mr. Needham's testimony or report and, thus, will deny as moot Defendant's Motion to Exclude Testimony (Doc. 54).  In other words, since the court has determined that Omnitrition is not liable to Ms. Ruff, the issue of damages is quite beside the point.

## V.    Conclusion

For the reasons herein stated, the court determines that Ms. Ruff has failed to establish that a genuine dispute of material fact exists as to her claims for breach of contract, tortious interference with an existing contract, and tortious interference with prospective business relations. Accordingly,  the court **grants** Omnitrition's Partial Motion for Summary Judgment (Doc. 55), as supplemented in its Supplemental Brief in Support of its Partial Summary Judgment Against Lori Ruff (Doc, 84),  with respect to all three claims asserted by Plaintiff. Thus, Ms. Ruff's claims for breach of contract, tortious interference with an existing contract, and tortious interference with prospective business relations are **dismissed with prejudice**.

As Omnitrition's Partial Motion for Summary Judgment (Doc. 55) also seeks summary judgment against several other plaintiffs who have settled and are no longer parties to this action, the court **denies as moot** Defendant's Motion with respect to former Plaintiffs Cynthia Moser, Paula Moser, Alise Christensen, Julie Guenther, Jessica Palvey, Mandy Hafner, Melanie Hoff, Sarah Laree Allen, Teresa Berlin, Shellianne Gitchel, Sunshine Heldstab, Jacquelynn Ennis, and Danielle Wallgren.   The court also **denies as moot** Defendant's Motion to Exclude Expert Testimony (Doc. 54).

As all claims asserted by Ms. Ruff have been dismissed, only the counterclaims in this action remain, which include claims against Ms. Ruff for: (1) breach of contract; (2) tortious interference with contracts and prospective business relations; (3) Defense of Trade Secrets Act under 18 U.S.C. § 1836; (4) misappropriation under TUTSA; (5) aiding and abetting, and concerted action; and (6) conspiracy.   This case will be four years old in September 2020 and is already considered an "old" case for statistical purposes.   It is time to bring this matter to a close. Both parties should seriously consider what is to be gained by further litigation of this hotly contested matter and the inherent risks associated with further litigation.   As Defendant has prevailed on summary judgment with respect to all of Plaintiff's claims, the court strongly encourages the parties to consider an expeditious resolution to the pending counterclaims.   The parties are to inform the court in writing by September 29, 2020, whether they can resolve the counterclaims in this action without further court involvement.

**It is so ordered** this 9th day of September, 2020.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 31**